[Civ. No. 17606.   First Dist., Div. One.   Apr. 23, 1958.]

JOHN E. BROOKS, Respondent, v. JOHN E. DUSKIN, JR., et al., Defendants; SAN JOSE ABSTRACT AND TITLE COMPANY, Appellant.

Royal E. Handlos for Appellant.

Timothy A. O'Connor for Respondent.

WOOD (Fred B.), J.—Defendant San Jose Abstract and Title Company, trustee for Fred and Lena Radach, has appealed from a judgment awarding plaintiff a mechanic's and materialman's lien of $2,368.04 against certain real property, prior to said defendant's deed of trust. The judgment also declares that the similar liens of other defendants, when perfected, are prior to said deed of trust.

The trial court found: Between August 27, 1953, and November 10, 1954, plaintiff furnished labor and materials used in the construction of a dwelling house on a certain

parcel of real property. He did so pursuant to a written agreement between plaintiff and John E. Duskin, Jr., Duskin agreeing to pay plaintiff the reasonable value thereof, which was $2,368.04. Thereafter and on December 1, 1954, plaintiff duly filed in the county recorder's office his claim of lien therefor. The claim was duly verified, contained a general statement of the kind of material and labor furnished by plaintiff, the person to whom he furnished labor and materials, the names of the owners or reputed owners, a description of the property sought to be charged with a lien sufficient for identification, and a statement of plaintiff's demand after deducting all just credits and off-sets. Plaintiff's lien and the liens of certain other defendants are all prior to the defendant title company's deed of trust which was dated October 9 and recorded October 20, 1953. Plaintiff's lien is inferior to the liens of such other defendants. All of the land described is necessary for the convenient use and occupation of the improvements thereon.

· These findings support the judgment but appellant claims some of them are without support in the evidence and that some are not within the issues.

(1) *The evidence is sufficient to support the finding as to the value of the labor and materials furnished.* Plaintiff testified that he worked 2,457 hours and incurred expenses of $75.16. He said he estimated the value of his services, discounting for his lack of skill, by comparing the labor cost on adjacent identical houses. This seems quite fair and reasonable. At even the lowest hourly wage for day labor, plaintiff's earnings would have been higher than as found by the court.

(2) *Was plaintiff the owner (as vendee) of the land and thus incapable of asserting such a lien as this? It does not appear so.*

Plaintiff commenced work pursuant to an oral agreement with Duskin (from whom appellant later derived title). Duskin wanted to give plaintiff an opportunity to purchase a house in a subdivision Duskin was developing, and to do so by working the labor out himself. Duskin would allow plaintiff to work on this house, doing as much toward the construction as he could. Upon completion plaintiff was to reimburse Duskin for any efforts the latter exerted in the way of labor or materials and time. Any work that plaintiff personally performed would reduce the purchase price. Duskin obtained a construction loan on the property. The forms were placed and construction started August 27, 1953. Duskin gave

plaintiff instructions from time to time on how to build the house. Plaintiff had never built even a "box" before this. The property was to be owned by Duskin until such time as the buildings were completed and until such time as plaintiff could pay Duskin the money that the latter would have expended. The property was to be held by the appellant until plaintiff paid to Duskin the purchase price of the property. A separate contemporaneous agreement was entered into providing for certain divisions of profits upon the sale of the realty by plaintiff within a certain period, a first right of refusal on such sale, and the plaintiff's right to buy up Duskin's rights under the agreement. This agreement was to terminate on Duskin's death. These agreements were oral, but were memorialized in a writing prepared around February 1, 1954, and dated September 9, 1953.

The purchase price was to be paid on or before 60 days of recording notice of completion. Upon plaintiff being in a position to pay, title would be transferred to him. In the event plaintiff should be unable to pay the purchase price the property would be transferred to Duskin upon Duskin's paying plaintiff for labor performed by the latter.

In October, 1954, Duskin filed a petition in bankruptcy. (The trustee refused to take this property over.) December 1, plaintiff filed his claim of lien for labor and materials. Duskin died January 7, 1955.

Plaintiff never paid the purchase price; never paid Duskin any money.

There is no indication that a notice of completion was ever filed. Plaintiff testified the building had not yet been completed.

Under these facts it does not appear that plaintiff has acquired or ever did acquire title, legal or equitable. The agreement created, essentially, an option to become owner, an option that was never exercised. Such a right, until exercised, does not effect a transfer. (12 Cal.Jur.2d 204-206, § 15.)

There seems no reason why the fact that plaintiff had the right to purchase the property at a later date should defeat his right to the lien. He would not be in the position of an owner, who owes a debt to another, avoiding that debt by recovering over against his own assets by impressing a lien on those assets. The debt that here might be defeated by the lien was not his own. It was Duskin's. Insofar as appellant is concerned, plaintiff is not in any position different from that of any other person entitled to a mechanic's lien. It would

be inequitable to allow appellant to reap the benefit of the increased value of the property, to the detriment of plaintiff who created that value.

(3) *Must plaintiff's action fail because he did not have a contractor's license? No.*

The parties have discussed this question with reference to the applicability or inapplicability of section 7044 of the Business and Professions Code which exempts from the licensing requirements "owners . . . building . . . for the occupancy of such owner and not intended for sale." "Owner" as here used may, conceivably, have a broader meaning than when used in discussing the relative rights of vendor and purchaser. We think, however, that the exemption declared in section 7053: "This chapter does not apply to any person who engages in the activities herein regulated, as an employee with wages as his sole compensation," is applicable. Plaintiff did the work under supervision by the owner who, if the purchase price were not paid, would pay plaintiff for his labor. These facts support an implied finding that in doing this work of construction plaintiff's relationship to it and the owner was that of an employee, not that of an independent contractor.

There appear to be no similar cases, but it would seem that in this peculiar situation, where eventually plaintiff would have the benefit of one or the other of these exemptions, he should not be denied both because his status had not yet become fixed. If he might not eventually attain an exempt status, the situation would be different. Appellant implied that plaintiff would not be entitled to the employee exemption because he ordered certain work done after February or March, 1954, and ordered materials and supplies after Duskin's death. The answer is that plaintiff was claiming for labor and materials supplied prior to December 1, 1954, when the claim of lien was filed. Mr. Duskin died on January 7, 1955, after that time. The fact that he was employed in a supervisory capacity before Duskin's death does not deprive him of the benefit of the employee exemption. (*Dorsk* v. *Spivack*, 107 Cal.App.2d 206 [236 P.2d 840].)

(4) *Was the claim of lien so defective as to invalidate the lien? No.*

Appellant contends that the claim of lien was fatally defective, in that it only specified that labor and "general building materials" were furnished, without itemizing the particular materials furnished. Code of Civil Procedure, section 1193.1(j), prescribing the form and contents of the claim of

lien, requires that it contain, among other things, "a general statement of the kind of work done or materials furnished by [the claimant], or both." In *McClain* v. *Hutton*, 131 Cal. 132, 136 [61 P. 273, 63 P. 182, 622], it was held unnecessary "to state specifically the kind of materials furnished or the prices of the several items." In *Johnson* v. *Smith*, 97 Cal.App. 752 [276 P. 146], it was held that a claim for "materials furnished" was not fatally defective in the absence of a showing of intent to defraud, in view of Code of Civil Procedure, section 1203, now section 1196.1. In *Winship* v. *Holden*, 90 Cal. App. 71, 73 [265 P. 572], a statement that a dealer in lumber and building materials "furnished materials" actually used in the construction of certain dwellings was held sufficient. In *Shafer* v. *Los Serranos Co.*, 128 Cal.App. 357 [17 P.2d 1036], the claim failed to set forth the kind of materials furnished and failed to state to whom the material was furnished. The answer pleaded that the owner had no knowledge that a building was being constructed on the premises. The court affirmed a judgment denying the lien, stating that under these circumstances, plaintiff failed to bring himself within Code of Civil Procedure, section 1203. That section, now section 1196.1, provided: "No mistake or errors in the statement of the demand, . . . shall invalidate the lien, unless the court finds that such mistake or error in the statement of the demand . . . was made with intent to defraud, or the court shall find that an innocent third party, without notice, direct or constructive, has since the claim was filed, become the bona fide owner of the property liened upon, and that the notice of claim was so deficient that it did not put the party upon further inquiry in any manner." In our case there is no suggestion of intent to defraud, nor does it appear that the description was so deficient that it did not put the appellant upon inquiry in any manner.

■ (5) *Appellant's other points have to do with portions of the judgment which are in favor of other parties than the plaintiff.* We find that appellant abandoned its appeal in respect to those parties and those portions of the judgment; wherefore it is appropriate that the appeal as to those portions of the judgment be dismissed upon this court's own motion.

Appellant's notice of appeal though taken "from the whole" of the judgment was directed only to the Clerk of the Court and to the attorney for the plaintiff, John E. Brooks. Appellant filed only an opening brief and the affidavit attached to it shows service only of two copies thereof, one

mailed to plaintiff's attorney, the other to the trial judge. No brief was filed and no appearance has been made upon this appeal by any party other than the plaintiff and the appellant. These facts justify a finding that appellant has abandoned any appeal it may have taken as to defendants Arthur Knudsen and Nicholas DiSalvo, copartners doing business under the name and style of K and M Cabinet Shop, Carl E. Anderson Company, E. M. Williams and M. J. Freitas, copartners doing business as Coast Door and Plywood Company, San Jose Paint and Wallpaper Company, and any other defendants (except appellant) there may have been. (*Palmer* v. *Holcomb*, 147 Cal.App.2d 94, 99-100 [305 P.2d 107].)

The judgment in favor of plaintiff is affirmed. The appeal from those portions of the judgment which are in favor of other parties (parties defendant) is dismissed.

Peters, P. J., and Bray, J., concurred.